IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-02416-TPO

URIAH FISH and KELLEY ROWAN,
individually and on behalf of all others
similarly situated,

Plaintiff,

v.

ENTRATA, INC,

Defendant.

---

**DEFENDANT ENTRATA, INC.'S MOTION TO DISMISS**

ORAL ARGUMENT REQUESTED

---

On June 1, 2026, Plaintiffs Uriah Fish and Kelley Rowan filed this putative class action asserting ten claims under the federal Credit Repair Organizations Act ("CROA"), the Colorado Credit Services Organization Act ("CCSOA"), the Colorado Consumer Protection Act ("CCPA"), and unjust enrichment. Defendant Entrata, Inc. ("Entrata") offers a variety of tools and resources to property management companies to help them more effectively manage their properties and attract new residents. Plaintiffs challenge one of those products, offered by Entrata's subsidiary Simplified Business Group, LLC d/b/a Rent Dynamics ("Rent Dynamics"),[1] called RentPlus. RentPlus is an optional service that reports resident's on-time rent payments to credit reporting agencies for a small monthly fee. Even Plaintiffs allege that RentPlus was disclosed to them, that it was optional, and that they had the right to cancel at any time. Plaintiffs enrolled in the service and received exactly what was promised. Plaintiffs now seek to recast this fully disclosed enrollment as a predatory scheme—but their own allegations defeat that narrative at every turn.

Entrata moves this Court pursuant to Rule 12(b)(6) to dismiss the Complaint in its entirety. First, Entrata is neither a "credit repair organization" under CROA nor a "credit services organization" under CCSOA. Both statutes seek to protect distressed consumers from false promises to expunge or alter negative credit histories—not companies that passively facilitate positive reporting to build consumer credit. Second, Plaintiffs' CCPA claim rests on the assumption, belied by their own allegations, that Entrata "buried" a negative-option enrollment provision in a dense lease. Plaintiffs identify no misrepresentations or deceit, and no cognizable injury. Thus, Entrata seeks dismissal of all Plaintiffs' claims with prejudice.

---

[1] Entrata and Rent Dynamics are referred to collectively as "Entrata." For this motion to dismiss, Entrata accepts the allegations as true, as it must, but reserves the right to dispute any of the allegations, including that Entrata, rather than Rent Dynamics, offered RentPlus.

## BACKGROUND

### I. RENTPLUS IS AN OPTIONAL POSITIVE RENT-REPORTING SERVICE OFFERED TO TENANTS BY PROPERTY MANAGER CLIENTS.

Entrata provides a wide variety of property management software services to property management companies ("PMCs"). Compl. (Dkt. 1) ¶¶ 3, 18-19.[2] One of those many products, offered by Rent Dynamics, is RentPlus, an optional service for tenants to have their on-time rent and/or utility payments reported to consumer credit bureaus. *Id.* ¶¶ 3, 19, 39-41, 114. RentPlus helps consumers by reporting only positive, on-time payments, which "allow[s] renters to build their scores" and "establish a payment history." *Id.* ¶ 5. Late payments are not reported. *Id.* If PMCs elect to offer RentPlus, it is offered to all residents during the leasing process. *See id.* ¶ 54.

A RentPlus addendum is included in the leasing documents which discloses the nature and cost of the service and that the residents will be enrolled upon signing or electronic delivery to the PMC. *Id.* ¶¶ 3, 42, 54-55, 114. The addendum also states that enrollment is optional, *id.* ¶ 114, and/or provides instructions for opting out, *id.* ¶ 88, at any time for any reason, as well as a link to the terms of use for RentPlus, which indicates RentPlus service is offered by Rent Dynamics.[3] Entrata publishes information regarding RentPlus on its public website, https://www.rentdynamics.com. *Id.* ¶ 6.

### II. PLAINTIFFS AGREED TO ENROLL IN RENTPLUS SERVICES

Plaintiff Uriah Fish leased apartments in the Vega and Carrick Bend apartment complexes in Northglenn, Colorado. Compl. ¶¶ 85, 94. Mr. Fish alleges that he enrolled in RentPlus services

---

[2] *See, e.g.* Entrata, Inc., *Multifamily Property Management*, https://www.entrata.com/solutions/multifamily; Entrata, Inc., *Operations Experience Platform*, https://www.entrata.com/platforms/oxp-old (last visited Aug. 21, 2026).
[3] *RentPlus Terms of Use* (June 6, 2024), https://legal.entrata.com/rent-plus-terms-of-use.

by signing a "RentPlus Addendum" in connection with his Vega renewal lease agreement in September 2021, and his Carrick Bend lease agreement in September 2024. *Id.* ¶¶ 84, 87-88, 94. The addendum notified Mr. Fish that he would be enrolled in RentPlus upon execution of the addendum and provided instructions for opting out. *Id.* ¶ 88. During the period of Mr. Fish's enrollment, RentPlus reported his on-time rental payments to credit bureaus. *See id.* ¶¶ 104-05.

Plaintiff Kelley Rowan leased an apartment in Aurum Apartments, located in Golden, Colorado, on January 3, 2026. *Id.* ¶¶ 109-10. In connection with her lease, Aurum Apartments offered ***optional*** RentPlus. *Id.* ¶ 114. Ms. Rowan agreed to RentPlus by electronically accepting the "RentPlus lease addendum." *Id.* ¶¶ 110, 114.[4] The addendum also states that a "[r]esident may cancel by sending written notice of termination to Rent Dynamics." *Id.* ¶ 115. Following her enrollment, on February 5, 2026, Ms. Rowan received, and opened a welcome email from RentPlus, notifying her again of the enrollment and the ability and means to opt out. *Id.* ¶ 117.

**LEGAL STANDARD**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

[4] Entrata's summary of allegations related to Ms. Rowan is without waiver of its motion to compel arbitration as to Ms. Rowan's claims, filed simultaneously herewith.

Claims that sound in fraud are subject to the heightened pleading standard under Rule 9(b). *E.g.*, *Cavitat Med. Techs., Inc. v. Aetna, Inc.*, 2006 WL 218018, at *3 (D. Colo. Jan. 27, 2006) (CCPA claims must be pled with particularity under Rule 9(b)); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (same); *Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906, 912 (N.D. Cal. 2005) (applying Rule 9(b) to CROA claims); *Boone v. Credit Pros Int'l, LLC*, 2024 WL 6962292, at *2 (S.D. Fla. 2024) (same); *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 728 (N.D. Ill. 2005) (same). That standard requires a plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE VIOLATIONS OF THE FEDERAL CREDIT REPAIR ORGANIZATIONS ACT (COUNTS I-IV).

Counts I-IV of the Complaint assert claims under CROA. Congress enacted CROA because "[c]ertain advertising and business practices of some companies engaged in the business of credit repair services" were harming consumers. 15 U.S.C. § 1679(a)(2); *see also* Compl. ¶¶ 26-28. CROA sought to protect consumers from "credit repair fraud" by targeting entities that "inappropriately led consumers to believe that adverse information in consumer reports can be deleted or modified regardless of the accuracy of the information." *Ad Astra Recovery Servs. v. Heath*, 2021 WL 764565, at *2 (D. Kan. Feb. 26, 2021) (quoting H.R. Rep. No. 103-486, at 57, 1994 WL 164513 (1994), stating that CROs market services "to consumers whose consumer reports contain adverse information that interferes with their ability to obtain credit.").

Here, Plaintiffs fail to plausibly allege that Entrata is a "credit repair organization" or "CRO" within the meaning of CROA. Even if Plaintiffs did allege that Entrata is a credit repair

organization (they did not), they fail to adequately allege that Entrata made any untrue or misleading statements regarding RentPlus services or engaged in any fraudulent or deceptive conduct in connection with enrollment practices for RentPlus. Thus, Counts I-IV fail.

**A. Entrata Is Not a Credit Repair Organization Subject to CROA.**

To state a claim under CROA, Plaintiffs must adequately allege that the services they challenge relate to a credit repair organization.[5] Plaintiff cannot, so Counts I-IV fail.

CROA defines a credit repair organization to be a:

> person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform . . . any service, in return for the payment of money. . . for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i) . . . .

15 U.S.C. § 1679a(3). Thus, to be a credit repair organization under CROA the company must have the objective "to help *distressed* consumers improve their credit situations." *Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 546 (D. Md. 2005) (emphasis added).

While there are no cases in this Circuit directly addressing the scope of credit repair organizations, courts in this Circuit have applied CROA where entities offered to investigate past credit history, dispute inaccurate or negative history with the credit bureaus, or resolve debt collection, consistent with CROA's goals. *Ensminger v. Credit Law Ctr., LLC*, 2024 WL 5202424, at *2 (D. Kan. Dec. 23, 2024) (defendant CRO offered to "investigate your credit report and dispute inaccurate reporting"); *Guildin v. Michael Law, LLC*, 2026 WL 2137180, at *1 (D. Colo. July 24,

[5] Any untrue or misleading statements actionable under § 1679b(a)(3) (Count I) or any fraudulent or deceptive conduct under § 1679b(4) (Count II) must be in connection with a CRO service; and any advanced fees under § 1679b(b) (Count III) or any written disclosures under § 1679c (Count IV) must be charged or provided by a CRO.

2026) (defendant CRO offered to resolve debts and prevent creditors from contacting him); *see also Ad Astra*, 2021 WL 764565, at *2 ("Congress was concerned with entities that were leading consumers to believe that all adverse information in a consumer report could be deleted.").

Other jurisdictions have further explained that "CROA intends to prohibit such organizations from misleading clients into believing that adverse, yet accurate, information might be cleansed from their credit reports, sooner than it might otherwise be, through the intercession of a credit repair organization." *Limpert v. Cambridge Credit Counseling Corp*., 328 F. Supp. 2d 360, 364 (E.D.N.Y. 2004). Courts distinguish between entities that are not subject to CROA because they legitimately "promis[e] future rewards for creditworthiness," and those that are because they "imply[] that existing bad credit records may be prematurely expunged" and "clients are given false hopes of absolution for confessed past credit sins." *Id.*; *see also FTC v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1333 (M.D. Fla. 2010) (CRO represented it could "remove or help consumers remove negative information from their credit reports"); *Polacsek*, 413 F. Supp. 2d at 546 (CROs aimed at "help[ing] distressed consumers improve their credit situations."); *In re Nat'l Credit Mgmt. Grp., L.L.C.*, 21 F. Supp. 2d 424, 457 (D.N.J. 1998) (CRO provided services to "monitor and provide advice to assist consumers [to] improve their credit ratings" and "establish and/or re-establish [their] credit."). Courts have also declined to find companies subject to CROA where the alleged credit services were "ancillary to their primary business." *See*, *e.g.*, *Sannes v. Jeff Wyler Chevrolet, Inc.*, 1999 WL 33313134, at *4 (S.D. Ohio Mar. 31, 1999) (auto dealers not CROs where they merely "arrange for purchase financing ancillary to their primary business of selling and leasing motor vehicles").

Here, Plaintiffs do not and cannot allege that Entrata is a credit repair organization. Plaintiffs do not allege that Entrata seeks to repair credit histories of distressed consumers or even targets distressed consumers for its services. Rather, they allege that RentPlus offers on-time rent reporting to ***all*** residents (not only those with distressed credit) to "build their credit profile" and "increase your credit score by paying your regular rent and utility bills." Compl. ¶¶ 42-46, 54. They allege that RentPlus serves "to aid renters in improving their credit through credit-building programs" to "establish consumer credit and boost consumer credit scores." *Id.* ¶ 47. Only positive rent information is reported, which could have a corresponding positive impact on a tenant's credit score if repeated timely payments permit consistent reporting. *See id.* ¶ 5. Plaintiffs do not allege that Entrata guarantees the RentPlus service can or will improve a tenant's credit record or credit history, nor could they.

Moreover, it is the tenant who ultimately performs the activity that may improve their credit record, history, or rating. Entrata does not perform any of the activities traditionally performed by CROs. It does not provide advice, counseling or assistance on credit repair. It does not negotiate with creditors on tenants' behalf. And it does not seek to remove or modify information in consumer reports. Plaintiffs do not allege that Entrata provides any of these services. Rather, if a tenant chooses to enroll in the RentPlus service, Entrata only passively facilitates tenants' reporting of their on-time payments to the major credit bureaus. If the mere reporting of payments to a credit bureau was contemplated by CROA, all furnishers of consumer reports would be deemed CROs.

Finally, Plaintiffs acknowledge that Entrata is a "software" company that offers RentPlus as one of many services to its PMC customers. Compl. ¶¶ 3, 18, 19. Any alleged "credit services" are at most ancillary to Entrata's primary business of offering property management software to

PMCs. *See Sannes*, 1999 WL 33313134, at *3. For all these reasons, Plaintiffs do not and cannot allege facts sufficient to demonstrate that Entrata is a credit repair organization within the meaning of the statute. Thus, Counts I–IV should be dismissed.

**B. Plaintiffs Allege No Untrue or Misleading Statements Sufficient to State a Claim Under 15 U.S.C. § 1679b(a)(3).**

Even if Plaintiffs could sufficiently allege that Entrata is a credit repair organization (they cannot), their claim under 15 U.S.C. § 1679b(a)(3) (Count I) would still fail because they do not sufficiently allege any untrue or misleading representations to support the claim.

Plaintiffs base their claim under 15 U.S.C. § 1679b(a)(3) on alleged misrepresentations arising out of the compensation PMCs receive related to RentPlus. By its plain meaning, the statute requires an express representation that relates to "the services of the credit repair organization." *See RCA Credit Servs.*, 727 F. Supp. 2d at 1334-35 (CROA violation where false representations of "remov[ing] . . . any and all negative information from their credit reports."). Plaintiffs fail to allege any untrue or misleading statement by Entrata in any context but certainly not in connection with the RentPlus services, namely on-time rent reporting. Instead, Plaintiffs rely only on Entrata's alleged (and unactionable) omissions or failures to disclose the fee sharing arrangement between it and the PMCs. Fee-sharing with PMCs has no bearing on the RentPlus service's "benefit to tenants," and Plaintiffs do not explain how offering a "credit reporting and financial service" that reports positive, on-time payments to credit bureaus was not beneficial to residents. Compl. ¶¶ 54, 140-41. Put simply, section 1679b(a)(3) requires untrue or misleading statements regarding the services the credit repair organization provides to consumers, and Plaintiffs identify none.

Moreover, even if omissions regarding fee-sharing were actionable (and they are not), Plaintiffs acknowledge that the statements were publicly posted to Entrata's website. *Id.* ¶¶ 56-

60 (alleging in detail the publicly available information regarding the RentPlus fee sharing for PMCs, including a fee calculator). There cannot be an actionable omission when the information at issue is publicly available. *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 18 (Colo. App. 2010) (finding no fraud where "the information to perform this analysis was publicly available"); *see also Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012) (barring fraud claim where plaintiff had "access to information that was equally available to both parties and would have led to the true facts"). Count I fails.

**C. Plaintiffs Allege No Fraudulent or Deceptive Conduct Sufficient to State a Claim Under 15 U.S.C. § 1679b(a)(4).**

Plaintiffs also assert a claim under 15 U.S.C. § 1679b(a)(4) for fraudulent or deceptive conduct in connection with the RentPlus enrollment process (Count II). To support this claim, Plaintiffs allege in conclusory fashion that "Defendant automatically enrolls consumers in RentPlus by burying a negative option agreement in consumer leases." Compl. ¶ 139. Plaintiffs' own allegations negate any suggestion of fraud or deception.

First, enrollment procedures are not the types of fraudulent or deceptive conduct CROA was intended to remedy, namely fraudulent or deceptive conduct regarding the services promised to distressed consumers to repair negative credit history. *See supra*, § I.A. Nevertheless, Plaintiffs' conclusory allegations regarding the enrollment process do not plausibly allege any fraud or deceit. There is no allegation of what Entrata concealed or misrepresented, what Entrata disclosed versus what PMCs disclosed, or what Ms. Rowan or Mr. Fish were actually told regarding the enrollment process. Such bare recitations of the elements of the claim do not meet the heightened pleading standard under Rule 9(b). *See supra*, § Legal Standard.

Second, Plaintiffs concede that the RentPlus service is ***optional*** and that residents are provided an opportunity and told how to opt out in the future. Compl. ¶¶ 78, 114-15. That some residents may have been unaware of the opt out process from discussions with their landlords or would not have enrolled if they knew more information does not equate to any deception or fraud by Entrata. *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 231 (Colo. 2018) (rejecting fraud claims and plaintiff's argument that it "would not have" agreed had it known more where the relevant information was disclosed in the transaction documents); *see also Flores v. Bank of America, N.A.*, 2019 WL 2470923, at *14 (D. Colo. 2019) (finding no deception where the challenged practices were disclosed). Moreover, Plaintiffs acknowledge that residents encounter the RentPlus addendum when signing their lease with their landlords, not Entrata. *Id.* ¶¶ 71, 77. Presenting an optional service with disclosures about the cost and nature of the service, and an express disclaimer of any guarantee of improving credit, is a far cry from the CROA-actionable misrepresentations that a company could or would "remove or help consumers remove any and all negative information from their credit reports." *RCA Credit Serv.*, 727 F. Supp. 2d at 1334-35.

## II. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE VIOLATIONS OF THE COLORADO CREDIT SERVICE ORGANIZATION ACT (COUNTS IV-VIII)

Each of Plaintiffs' claims under CCSOA (Counts V-VIII)[6] fails for the same reasons as the CROA claims. As Plaintiffs allege, "[t]he CCSOA largely parallels the protections found in the CROA." Compl. ¶ 38. Entrata does not meet the definition of a "credit services organization"

[6] The Complaint contains two counts labeled "Count V" arising under C.R.S. § 5-19-104(1)(a) and (c) respectively. There is also no Count VII in the Complaint.

under CCSOA, and Plaintiffs have failed to adequately allege any deceptive or fraudulent conduct by Entrata. Accordingly, Counts V-VIII should be dismissed.

**A. Entrata Is Not a Credit Services Organization.**

CCSOA was enacted to largely mirror CROA and address the same concerns. As a result, the same reasoning as to why Entrata is not a credit services organization (*supra*, § I.A.) applies to why Entrata is not a credit services organization under CCSOA.

Moreover, CCSOA has additional requirements for credit services organizations that Entrata does not meet. CCSOA requires that covered services be with respect to the "extension of credit by others," which means "the right to defer payment of debt or to incur debt and defer its payment offered or granted . . . ." C.R.S. § 5-19-103(2)-(3). Rent is not debt. *See Robledo v. Yardi Sys., Inc.*, 741 F. Supp. 3d 617, 625 (W.D. Tex. 2024) (timely rent payments are "not made in connection with an amount owed due to a breach of an obligation, and [are] not made in connection with an extension of credit."). Plaintiffs do not allege that they borrow money from Entrata to pay their rent. Because residents, like Plaintiffs, are not obtaining "the right to defer payment of debt or to incur debt and defer its payment," RentPlus does not involve extensions of credit and, as a result, Entrata is not within CCSOA's definition of a CSO. Counts V-VIII should be dismissed.

**B. Plaintiffs Allege No Deceptive Conduct Under C.R.S. § 5-19-104(1)(c).**

Consistent with CROA, C.R.S. § 5-19-104(1)(c) prohibits a credit services organization from "[m]ak[ing] or us[ing] any untrue or misleading representations" or engaging in "fraud or deception" in connection with the offer or sale of the services of a credit services organization. Like Plaintiffs' fraud and deception claim under CROA, Plaintiffs' CCSOA claim is premised on Entrata "burying a negative option agreement in consumer leases." Compl. ¶ 184. For all the

reasons discussed for Plaintiffs' CROA claim, *supra* § I.B., Plaintiff cannot support a claim for fraud or deception where the agreement was disclosed to residents.

## III. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE COLORADO CONSUMER PROTECTION ACT.

Plaintiffs' claim under the Colorado Consumer Protection Act ("CCPA")[7] rests on the allegation that Entrata "bur[ied] a negative-option enrollment provision" and "[f]ail[ed] to disclose material information." Compl. ¶¶ 209, 211. Plaintiffs' claim fails because it does not adequately allege, under Rule 9(b)'s heightened pleading standard, that ***Entrata*** engaged in the challenged enrollment conduct or what material information ***Entrata*** intended to withhold to induce residents to enroll in RentPlus. *Campfield*, 532 F.3d at 1120 (requiring that the defendant engaged in an unfair or deceptive trade practice, that the practice occurred in the course of the defendant's business, and that defendant intended to induce the consumer through non-disclosure); *Cavitat Med. Techs.*, 2006 WL 218018, at *3 (applying Rule 9(b)'s heightened standard to CCPA claim).

***Plaintiffs Fail to Allege that Entrata Buried the RentPlus Terms.*** The lease agreements at issue are contracts between each Plaintiff and their respective landlord, not Entrata. Compl. ¶¶ 87, 112-13. Plaintiffs do not allege that Entrata directed or controlled the placement of the RentPlus addendum within the lease or the overall length, density, or font size of the lease. *Id.* ¶¶ 3, 87, 110, 211. Because Plaintiffs fail to allege with particularity any deceptive act by Entrata,

---

[7] To state a claim under the CCPA, a plaintiff must plausibly allege: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the practice occurred in the course of the defendant's business; (3) the practice significantly impacts the public as actual or potential consumers; (4) the plaintiff suffered an injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008). "If all elements of a CCPA claim are not met, the claim fails as a matter of law." *Donna v. Countrywide Mortg.*, 2015 WL 9456325, at *3 (D. Colo. 2015).

their CCPA claim cannot survive Rule 9(b) scrutiny. *Donna*, 2015 WL 9456325, at *4 (dismissing CCPA claim where plaintiff failed to "state any facts to indicate that a fraud was perpetrated").

Nevertheless, the enrollment provisions are not "concealed." Compl. ¶ 212. Ms. Rowan's RentPlus addendum was presented as a separate page in standard font, with key terms—including the monthly charge, the right to cancel, and optional enrollment—bolded and, for optional-enrollment, underlined. *Id.* ¶ 116; Ex. A (2026 Rowan RentPlus Addendum).[8] The addendum states twice that Ms. Rowan can cancel at any time, and directs her how to do so. *Id.* The RentPlus enrollment provision in Mr. Fish's Vega apartment lease was "written in the same size, color, and font" as the rest of his lease, and he does not challenge any other lease provision. Compl. ¶ 87.

***Plaintiffs Fail to Allege the Fee Is Unconscionable.*** Plaintiffs also alleges that the enrollment provision is procedurally and substantively unconscionable. ¶¶ 213-14. It is not. Plaintiffs allege that the provision is procedurally unconscionable because the enrollment provision was "buried in a form lease" and "largely non-negotiable." *Id.* ¶ 213. But Plaintiffs allege elsewhere that the service is optional, *id.* ¶ 114, and regardless, the allegations are insufficient to support a finding of unconscionability. *See Nursa, Inc. v. Younge & Crane, Inc.*, 2025 WL 2687149, at *10 (D. Utah Sept. 19, 2025) (under Utah law, contracts "not subject to negotiation are not unconscionable"); *Bonanno v. Quizno's Franchise Co.*, LLC, 2009 WL 1068744, at *18 (D. Colo. Apr. 20, 2009) ("[U]nder Colorado law, a take-it-or-leave-it contract does not automatically render the agreement unconscionable" and "[t]he fact that [the term] comes towards the end of the agreement does not make it any more difficult to see or understand.").

---

[8] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss.")

Plaintiffs further allege a bare conclusory assertion that the enrollment provision is "substantively unconscionable because it imposes a fee that bears no reasonable relationship to the actual cost or value of the benefit provided." Compl. ¶ 214. But Plaintiffs offer no allegations to plausibly infer that the $8.95 or $14.95 monthly fee is disproportionate to the service rendered. *Frost v. ADT, LLC*, 947 F.3d 1261, 1269 (10th Cir. 2020) (finding no unconscionability where claimants paid a small monthly premium and claimants failed to show any cost-price disparity or that defendant charged an excessive price).

***Plaintiffs Fail to Identify Purported Omissions.*** Plaintiffs' mere recitation of the statutory language regarding purported "failures to disclose material information" does not satisfy any pleading standard, let alone the heightened 9(b) standard. *See supra*, § Legal Standard. Moreover, Plaintiffs do not identify what material information Entrata purportedly failed to disclose with an intent to induce residents to enroll. To the contrary, Plaintiffs acknowledge that the RentPlus addendum included information about the positive rent reporting service, the cost, and the ability to opt out. Compl. ¶¶ 87-88, 114-15, 211. Plaintiffs also received welcome emails from RentPlus notifying them of their enrollment and the applicable charges. *Id.* ¶¶ 96, 101, 111. Plaintiffs may not have read those materials, but Plaintiffs do not adequately allege that Entrata failed to disclose them. *Flores*, 2019 WL 2470923, at *14 (dismissing CCPA claim where defendant "only took actions that were explicitly disclosed, at least as possibilities, in the relevant contracts").

***Plaintiffs Fail to Allege Injury in Fact or Causation.*** Plaintiffs' sole injury allegation is that the RentPlus fee "bears no reasonable relationship to the actual cost or value of the benefit provided" and "delivers only minimal benefit to consumers." Compl. ¶ 214. Because Plaintiffs have failed to allege a deceptive trade practice by Entrata, they "failed to establish a causal link

between Defendant's challenged practices and Plaintiff's alleged injury." *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1114 (D. Colo. 2018) (no causation where plaintiff had not "identified nor produced any allegedly deceptive advertisements or other information that Defendant has issued"). Where, as here, the information Entrata provided was accurate and the service was delivered as described, no cognizable injury flows from the alleged misconduct. *See R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133 (10th Cir. 2009) ("[S]o long as the information in E3's reports is accurate, the potential investors in the projects analyzed by the reports cannot be injured by E3's alleged misconduct . . . .").

## IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS

Finally, Plaintiffs' unjust enrichment claim is barred because both Plaintiffs' claims are subject to the RentPlus agreements. Compl. ¶¶ 87-88, 91, 113; *Bd. of Governors of Colo. State Univ. v. Alderman*, 563 P.3d 1205, 1213 (Colo. 2025) ("[A] party may not assert a claim for unjust enrichment if a valid contract covers the same subject matter."). And, in any event, Plaintiffs unjust enrichment claim fails because Plaintiff's allegations establish that they received the benefit of the bargain—positive rent reporting. *See* Compl. ¶ 104; *Owen-Brooks v. DISH Network Corp.*, 2024 WL 4338133, at *18 (D. Colo. 2024) (unjust enrichment not adequately alleged where plaintiffs do not claim defendant failed to perform); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) (rejecting unjust enrichment where "[i]t is undisputed that [p]laintiffs received the food services for which they paid").

## CONCLUSION

For these reasons, Entrata requests that this Court dismiss each of Plaintiffs' claims.

Dated: August 24, 2026

By: */s/ David Cross*

David Cross
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
DCross@goodwinlaw.com

Alicia Rubio-Spring
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000
Fax: +1 617 523 1231
ARubio-Spring@goodwinlaw.com

*Counsel for Defendant Entrata, Inc.*

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel certifies that on August 17-18, 2026, counsel for Defendant Entrata, Inc. conferred with counsel for Plaintiffs via email. Entrata's counsel was unable to obtain Plaintiffs' counsel's consent to Entrata's Motion to Dismiss.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing upon the following counsel for Plaintiff:

Rachel Dempsey, Atty Reg. No. 57708
Toree Lindblad, Atty Reg. No. 62375
Seth Froman, pro hac vice forthcoming
TOWARDS JUSTICE
1580 N Logan Street
Ste 660 PMB 44465
Denver, CO, 80203-1994
Telephone: (720) 441-2236
rachel@towardsjustice.org
toree@towardsjustice.org
seth@towardsjustice.org

Kristi C. Kelly, pro hac vice forthcoming
Andrew J. Guzzo, pro hac vice forthcoming
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

*/s/ David Cross*